[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
INTRODUCTION
The defendant tenant Yvonne Canby occupies the premises owned by the plaintiff landlord at 22 Rutland Street, Hartford, Connecticut. On or about December 31, 1989, the plaintiff served a Notice to Quit on the defendant to vacate the premises by January 10, 1991 for failure to pay rent. The defendant remained in the premises and the plaintiff instituted the instant action returnable on January 23, 1991. Plaintiff claims that the parties entered into an oral month-to-month lease and that the defendant failed to pay the December rent. On February 4, 1991, the defendant filed a Motion to Dismiss alleging lack of jurisdiction for failure to comply with 24 C.F.R. § 882.215 et seq. governing the Section 8 Housing Program and failing to give a notice of termination to the Public Housing Authority (PHA) at the same time the Notice to Quit was served. CT Page 2795
 II.
Discussion
 A.
It is clear that parties — both landlord and tenant — to a Section 8 Assistance Payments Program must comply with federal and state laws and regulations concerning the eviction process. Jefferson Garden Associates v. Greene, 202 Conn. 128, 132-33
(1987). Failure to comply with applicable federal regulations concerning eviction procedures deprives this court of jurisdiction. Monroe v. Owens, SPH 8312-21751, Aronson, J. (April 6, 1984) (H-539). The requirement for simultaneous notice to Imagineers, Inc., the PHA, is mandatory. 24 C.F.R. § 882.215 (c)(4); Freshwater Pond Apts. v. Olivera, SPH 8508-29782, Goldstein, J. (September 30, 1985) (H-689). The only question is whether the plaintiff is required to give such notice.
 B.
The plaintiff takes no issue with the defendant's claim that federal law was not followed. Rather, the plaintiff claims that federal law is not applicable as no contract under Title 24 existed. The plaintiff maintains that this is simply a private contract.
At the hearing on the Motion to Dismiss, this court heard testimony from Ms. Deborah Thomas, an employee of Imagineers, Inc., an organization which administrates the Section 8 Housing Program in Hartford. Ms. Thomas testified that the defendant is a Section 8 participant and has been so at this address since at least 1988 under a contract with the predecessor of the plaintiff. The plaintiff purchased the property in February 1989. She indicated that the plaintiff did not sign the leasing contract for the 1989-1990 or 1990-1991 period but that she has made several attempts to have him sign. The plaintiff argues that having not signed either agreement, he is not bound by it.
She further testified that Section 8 payments were sent to the plaintiff in 1989 and through April 1990. At that time, Imagineers withheld payments after learning the defendant was charged for utilities in violation of the contract. Rental payments were withheld through August 1990 until $1,050 had been recouped. Payments commenced again for the balance of August and September 1990. Payments were stopped in October because the plaintiff still had not signed the 1989-1990 CT Page 2796 contract. A warning letter was sent on November 19, 1990 requesting the plaintiff to sign the contract which ran from December 1989 to December 1990 (Exhibit 1). The plaintiff had cashed all rental checks it received from Imagineers and apparently did not contest the withholding during the summer 1990 for the utility payback.
 C.
A review of the Housing Assistance Payments Contract (Exhibit 2) between the PHA and the plaintiff's predecessor, Desmond Powell, indicates that the contract was to be for at least one year, terminating on the last day of the term of the lease. Neither party proffered the lease. Thus, the contract might or might not be still in effect. The testimony of Ms. Thomas indicated that while additional contracts were prepared and submitted to the plaintiff, payments continued under this 1988-89 contract. Indeed, she testified that there was no ending date.
Paragraph five of the contract contains certain warranties from an owner who receives and endorses a check. Those warranties include but are not limited to a certification that: i. the Contract unit is in decent, safe, and sanitary condition and the Owner is providing all the services, maintenance and utilities as agreed to in the Lease, ii. the Contract unit is leased to the Family named in section 1(A), and the lease is in accordance with section 1(B). (HUD approved).
Paragraph nine concerns the termination of the tenancy and prescribes those requirements of notice as previously discussed. The contract does not appear to authorize any other method of termination. Paragraph 3D notes that the contract will terminate if one year has passed since the date of the last rental payment on behalf of the tenant.
Paragraph Thirteen provides for certain remedies if the owner breaches the contract.
 D.
A somewhat similar situation arose in Manchester Garden Associates v. Demirgian, SPH 7907-02099, Spada, J. (December 17, 1979) (H-150) in which the plaintiff maintained that since the one year lease had expired it was not bound by the applicable federal law. That argument was rejected in part since the summary process proceedings commenced during the term CT Page 2797 of the lease and while the plaintiff was receiving benefits from the rental payments. In this case the evidence is not as definitive. Yet, the court notes the parties evidently treated the initial lease as continuing. Title 24 C.F.R. § 887.209 (C)(2) notes that a lease continues until
 (A) A termination of the housing voucher contract by the PHA; (B) A termination of the lease by the family in accordance with the lease or by mutual agreement during the term of the lease. The lease must permit a termination of the lease by the family without cause, at any time after the first year of the term of the lease, on [sic] not more than 60 days written notice by the family to the owner; or (C) A termination of the lease by the owner. The owner may not terminate tenancy except as provided in 887.213. (ii) The term of the lease must begin at least one year before the end of the term of the last funding increment under the ACC.
In this particular case only subsection c applies and clearly there has been no compliance with 24 C.F.R. § 887.213. The court also notes that the present action was not brought on a lapse of time theory which might support the plaintiff's argument. Rather, it was brought for nonpayment of rent.
Title 24 C.F.R. § 887.213 (b)(1) allows a landlord participating under the federal program to terminate a tenancy. In the present case, the plaintiff has not complied with the federal requirement. Having benefitted [benefited] from that program since he took ownership of the subject premises and having indicated his willingness to be bound by that program through the endorsement of 1990 rental checks and the repayment procedures, he must follow the program's termination procedures. Having failed to do so, the defendant's Motion to Dismiss is granted.
BERGER, J.